```
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE
```

Lucio Eduardo Fernandez,
    Petitioner

    v.                                  Civil No. 06-cv-281-SM
                                        Opinion No. 2008 DNH 126
Richard M. Gerry, Warden,
New Hampshire State Prison,
    Respondent


**O R D E R**

Lucio Fernandez, an inmate at the New Hampshire State Prison, petitions for a writ of habeas corpus. 28 U.S.C. § 2254. He argues that his incarceration is unconstitutional because his conviction for second-degree murder resulted from a denial of due process of law. Before the court is respondent's motion for summary judgment. Petitioner objects. For the reasons given, respondent's motion for summary judgment is granted.


**Background**

After a jury trial in the New Hampshire Superior Court, petitioner was convicted of second-degree murder for the stabbing death of Brian O'Neill. His conviction was affirmed on appeal. State v. Fernandez, 152 N.H. 233 (2005).

The opinion in petitioner's direct appeal describes the following relevant facts:

> The defendant stabbed another man to death. After the stabbing, the defendant threw away the knife and fled the scene. He later fled the East Coast. United States Marshals arrested him approximately seventeen months later in Los Angeles.
>
> At trial, the defendant admitted that he stabbed the victim, but claimed to have acted in self-defense.

Id. at 235.

After he lost his appeal, Fernandez petitioned this court for a writ of habeas corpus, asserting six grounds for relief. He claimed that his conviction was obtained in violation of his right to due process and a fair trial because the trial court:

1. denied his request for voir dire questions regarding racial and geographic bias;

2. refused to conduct voir dire of the only juror of color, before designating her as an alternate, when she was alleged to have been sleeping during closing arguments;

3. allowed the prosecutor to refer to his actions as "murder" during the trial and to elicit the term "murder" from testifying witnesses to describe his actions;

4. allowed evidence to be introduced at trial that he, after leaving the jurisdiction where the crime was committed, appeared on a national television show about people wanted by the police;

> 5. allowed a duffel bag and its contents, which were guns allegedly owned by him, to be introduced as evidence at trial;
>
> 6. allowed the medical examiner to testify that in his expert opinion various knife wounds on the deceased were evidence of "torture" or "taunting" injuries.

On initial review, the magistrate judge determined that only the first of petitioner's six claims had been properly exhausted. See 28 U.S.C. § 2254(b)(1)(A). Petitioner returned to the Superior Court and moved to vacate his conviction and sentence or, in the alternative, to be given a new trial. In that motion, and apparently for the first time, he cast his five remaining claims in constitutional terms. The trial court, however, noted that petitioner's motion presented "the same issues previously decided by the Supreme Court" and denied it on grounds that "[t]he Supreme Court Mandate 152 N.H. 233 (2005), is the law of the case." Petitioner filed a notice of discretionary appeal, which the New Hampshire Court declined to accept, thus exhausting his claims.

## The Legal Standard

Federal habeas corpus relief may be granted "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, "federal habeas corpus relief does not

lie for errors of state law." Evans v. Verdini, 466 F.3d 141, 145 (1st Cir. 2006) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).

Passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), has significantly limited the power of the federal courts to grant habeas corpus relief to state prisoners. When a petitioner's claim "was adjudicated on the merits in State court proceedings," id., a federal court may disturb a state conviction only when: (1) the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2); or (2) the state court's resolution of the issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); see also Williams v. Taylor, 529 U.S. 362, 399 (2000).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the

4

Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. A court unreasonably applies governing legal principles if it "(I) applies those principles to the facts of the case in an objectively unreasonable manner; (ii) unreasonably extends clearly established legal principles to a new context where they should not apply; or (iii) unreasonably refuses to extend established principles to a new context where they should apply." Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007) (citing L'Abbe v. DiPaolo, 311 F.3d 93, 96 (1st Cir. 2002)).

"AEDPA's strict standard of review only applies to a claim that was adjudicated on the merits in state court proceedings." Norton v. Spencer, 351 F.3d 1, 5 (1st Cir. 2003) (quoting Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001); citing Ellsworth v. Warden, 333 F.3d 1, 6 (1st Cir. 2003)). "A matter is 'adjudicated on the merits' if there is a 'decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'" Teti v. Bender, 507 F.3d 50, 56

(1st Cir. 2007) (quoting <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 311 (2d Cir. 2001)).  "When the state court has never addressed the particular federal claim at issue, federal review is de novo." <u>Dugas v. Coplan</u>, 506 F.3d 1, 7 (1st Cir. 2007) (citing <u>Pike v. Guarino</u>, 492 F.3d 61, 67 (1st Cir. 2007)).  "As [the court of appeals for this circuit has] noted, a federal court 'can hardly defer to the state court on an issue that the state court did not address.'"  <u>Dugas</u>, 506 F.3d at 7 (quoting <u>Fortini</u>, 257 F.3d at 47).

Here, the strict standard of review applies to petitioner's first claim, as that claim was adjudicated on the merits in the New Hampshire state courts.  See <u>Fernandez</u>, 152 N.H. at 237–39.  Because there is no reasoned state court decision addressing petitioner's remaining claims after they were presented in constitutional terms, those claims are subject to de novo review.

**Discussion**

<u>Claim 1</u>

Petitioner is from Lawrence, Massachusetts, and he is Hispanic.  Brian O'Neill, the person petitioner was convicted of stabbing to death, was not Hispanic.  According to petitioner, the trial court denied him a fair trial, in violation of the Fourteenth Amendment's due process clause, by declining to ask

6

two voir dire questions intended to probe juror attitudes about Hispanic individuals from Cuba and residents of Lawrence (and other Massachusetts municipalities with large Hispanic populations).

"The [United States] Supreme Court has explained that federal authority over voir dire in cases tried in state courts is 'limited to enforcing the commands of the United States Constitution.'" Kater v. Maloney, 459 F.3d 56, 66 (1st Cir. 2006) (quoting Mu'Min v. Virginia, 500 U.S. 415, 422 (1991)).

In Ham v. South Carolina, the Supreme Court held that a trial court that refused a defendant's requests for voir dire on racial prejudice violated the Fourteenth Amendment due process rights of an African-American defendant who appeared to have been known locally for work with various civil rights groups and whose "basic defense at the trial was that law enforcement officers were 'out to get him' because of his civil rights activities, and that he had been framed on the drug charge." 409 U.S. 524, 525 (1973). In Ristaino v. Ross, the Supreme Court expressly declined to construe Ham to require voir dire on racial prejudice "whenever there may be a confrontation in a criminal trial between persons of different races or different ethnic origins." 424 U.S. 589, 590 (1976). According to the Court: "The mere fact

that the victim of the crimes alleged [in Ristaino] was a white man and the defendants were Negroes was less likely to distort the trial than were the special factors involved in Ham." 424 U.S. at 597. That is, in Ham, but not in Ristaino, "[r]acial issues were . . . inextricably bound up with the conduct of the trial." Id. In a third case, in which it vacated the petitioner's death sentence but not his murder conviction, the Supreme Court held that "a capital defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias." Turner v. Murray, 476 U.S. 28, 36-37 (1986).

For his part, petitioner relies on Rosales-Lopez v. United States, 451 U.S. 182 (1981). In that case, the Supreme Court ruled that "Aldridge[, v. United States, 283 U.S. 308 (1931)] and Ristaino together, fairly imply that federal trial courts must make . . . an inquiry [into racial prejudice] when requested by a defendant accused of a violent crime and where the defendant and the victim are members of different racial or ethnic groups." 451 U.S. at 192. However, as the opinion makes clear, the inquiry described in Rosales-Lopez is to be applied "in certain circumstances in which such an inquiry is not constitutionally mandated," id. at 190, and was imposed by the Court under its "supervisory authority over the federal courts," id. at 191. In

8

other words, Rosales-Lopez announced "an appropriate nonconstitutional standard for the federal courts," id. at 190, not a minimum constitutional standard state courts must meet.

Given that racial issues were not inextricably bound up with the conduct of petitioner's trial, see Ristaino, 424 U.S. at 597, petitioner's conviction does not rest on a decision that is contrary to Ham. See Williams, 529 U.S. at 412-13. And, given that the Supreme Court declined, in Ristaino, to adopt the position petitioner advocates here – that is, the Supreme Court declined to extend Ham to cover a case in which race was not an issue at trial – petitioner's conviction does not rest upon an unreasonable application of Ham. See Sleeper, 510 F.3d at 38. Rather, it rests squarely upon the Supreme Court's own application of Ham to the facts of Ristaino. Moreover, as Turner involved the sentencing of a capital defendant, and petitioner here was not convicted of a capital offense, Turner is inapplicable. Accordingly, petitioner is not entitled to relief based upon his first claim.

Claim 2

After closing arguments, one of the prosecuting attorneys told the trial judge that one of the jurors (number 15, the only person of color on the jury) appeared to be sleeping during the

arguments.  One of petitioner's attorneys made a similar observation, as did a law clerk and two bailiffs, who also passed along observations from other spectators, including a reporter. Based upon those reports, the trial court determined that juror 15 had not been paying attention, and appeared to be sleeping. Over the objection of petitioners' counsel, who wanted the court to voir dire juror 15, the court designated her as an alternate.

Plaintiff characterizes the trial court's decision not to voir dire juror 15 as "arbitrary and an abuse of discretion," and further argues that "the fact that the trial court gave any consideration, let alone any weight, as to spectators' opinions [concerning juror 15], compromises the petitioner's right to a fair and impartial trial and is an abuse of discretion." Petitioner contends that the trial court violated his Fourteenth Amendment right to a fair trial, which includes the right to an impartial jury.  See Morgan v. Illinois, 504 U.S. 719, 729 (1992).  But, other than his passing reference to juror 15 as the only person of color on his jury, petitioner does not indicate how declining to voir dire juror 15, or designating her as an alternate, deprived him of an impartial jury.  Had juror 15 been questioned and the reported observations confirmed, grounds for excusal would have existed.  If the reported observations had not been confirmed, then juror 15 would still, like every other

10

juror, have been subject to designation as an alternate.  In either case — excusal, or designation as an alternate (that did not participate in returning the verdict) — petitioner would not be, and was not, deprived of an impartial jury.  Accordingly, petitioner is not entitled to habeas corpus relief based upon his second claim.

Claim 3

Prior to trial, petitioner moved to preclude the prosecution from using the word "murder" to describe the act for which he was being tried.  The trial court denied the motion, and during trial, the prosecutor referred to petitioner's act as a "murder," and also elicited testimony that so characterized petitioner's killing of O'Neill.  According to plaintiff, the prosecutor's use and elicitation of the word "murder" deprived him of a fair trial, in violation of the Fourteenth Amendment, because whether or not his killing of O'Neill was a murder was a question for determination by the jury.

In Olszewski v. Spencer, a case in which a habeas corpus petitioner argued "that the prosecution made a number of prejudicial statements in closing argument that violated [his] due process rights," 466 F.3d 47, 59 (1st Cir. 2006), the court of appeals for this circuit explained:

11

> For this kind of due process challenge to succeed, "it is not enough that prosecutors' remarks were undesirable or even universally condemned . . . ." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). Rather, as the Supreme Court has made clear, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Id. (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

Id. (parallel citations omitted).

Use of the term "murder" may have been prejudicial, but it was not unfairly so. In Darden, the Supreme Court held that language substantially more inflammatory than that at issue here did not deprive the defendant of a fair trial. See 477 U.S. at 181 & n.12 (reporting prosecutor's argument that the defendant "shouldn't be out of his cell unless he has a leash on him and a prison guard at the other end of that leash"). As justification, the Court explained, among other things, that "[t]he prosecutors' argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent." 477 U.S. at 181-82 (citation omitted). Moreover, unlike the word "animal," use of which by the prosecutor in Darden to describe the defendant was held not to be a due process violation, the offending word in this case was not used as a gratuitous description of the

defendant; it was descriptive of the prosecutor's theory of the case.  Because use of the word "murder" to characterize the charged conduct in a trial for second-degree murder did not "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process," Olszewski, 466 F.3d at 59, petitioner is not entitled to habeas corpus relief based on his third claim.

Claims 4, 5, and 6

In petitioner's three remaining claims, he argues that his Fourteenth Amendment right to a fair trial was violated by the trial court's admission of evidence concerning: (1) his appearance on a television program about fugitive criminals; (2) his possession of a duffel bag containing a gun after he killed O'Neill but before he took flight; and (3) the manner in which certain wounds were inflicted on the victim.  The New Hampshire Supreme Court held each category of evidence to be admissible under the New Hampshire Rules of Evidence, Fernandez, 152 N.H. at 241-45, and further held that even if the medical examiner's testimony that petitioner inflicted "torture" wounds was inadmissible, its admission constituted harmless error "in light of the overwhelming evidence against the defendant," id. at 245.

"Violation of a rule of evidence does not itself amount to a constitutional violation, which is a necessary predicate for a habeas claim."  Evans, 466 F.3d at 145 (citing Kater, 459 F.3d at 64).  In other words:

> It is commonly said that "mere" errors under state law in the admission of evidence are not cognizable under federal habeas review.  See 1 Hertz & Liebman, Federal Habeas Corpus Practice and Procedure § 9.1, at 411-12 (4th ed. 2001).  This means that the question is not whether the admission of the evidence was state-law error, but whether any error rendered the trial so fundamentally unfair that it violated the Due Process Clause.  See Petrillo v. O'Neill, 428 F.3d 41, 44 & n.2 (1st Cir. 2005); see also Fortini, 257 F.3d at 47 ("[N]ot every ad hoc mistake in applying state evidence rules, even in a murder case, should be called a violation of due process; otherwise every significant state court error in excluding evidence offered by the defendant would be a basis for undoing the conviction.").

Kater, 459 F.3d at 64.

**Petitioner's appearance on America's Most Wanted**.  At trial, the prosecutor asked petitioner five questions to establish that, while a fugitive, he saw a report about his crime on the television program America's Most Wanted, yet remained a fugitive.  In compliance with the trial court's order on a motion in limine, the prosecutor never elicited the name of the program, establishing only that petitioner has seen a report about himself "on a TV show."  The prosecutor introduced petitioner's testimony on this point to demonstrate consciousness of guilt, as evidenced

by his knowing flight from authorities, and to disprove his claim of self-defense. Petitioner argues that despite his generic testimony about appearing "on a TV show," the jurors must have concluded that the TV show was <u>America's Most Wanted</u> which, in turn, unfairly prejudiced him by inviting jurors to group him "with notorious criminals such as Capone, Dillinger, Whitey Bulger and Osama Bin Laden, all of whom appeared on the television program" and invited "the attachment of sinister connotations that the F.B.I. want[ed] [petitioner], in particular, because of his elevated status." Given the brevity of the reference, the fact that the name of the program was not elicited, and the legitimate purposes for which the evidence was admitted, <u>see</u> <u>State v. Torrence</u>, 134 N.H. 24, 27 (1991) ("It is beyond dispute that evidence of post-offense flight is probative on the issue of the defendant's consciousness of guilt."), introduction of the fact that petitioner saw himself featured on a television program about wanted criminals, yet remained a fugitive, did not render his trial so fundamentally unfair that it violated his right to due process. <u>See</u> <u>Kater</u>, 459 F.3d at 64.

**Petitioner's possession of a gun before he fled the state**. At trial, the prosecution elicited testimony establishing that after he killed O'Neill, petitioner was given a duffle bag with a police scanner and a gun inside. The purpose of the evidence was

15

to show petitioner's consciousness of guilt by demonstrating the preparations he made for taking flight. On that issue, the evidence was probative, especially in the context of petitioner's statement "that 'he wasn't going in alive, that he was not going back to jail [and that] [h]e would rather be dead and he would kill himself first before he went to prison.'" Fernandez, 152 N.H. at 243. According to petitioner, that evidence was "particularly offensive" because "there was no direct or circumstantial evidence that [he] had the bag and gun with him at the time he actually fled the state or at any time right up until his arrest" and because "[t]he eyewitness who testified that she saw [him] with a bag and gun, saw this days before he took flight." While plaintiff appears to argue that the disputed evidence had relatively little probative value, he does not explain how it was unfairly prejudicial. As with evidence of petitioner's appearance on America's Most Wanted, evidence that he possessed a gun and a police scanner before he fled the state did not render his trial so fundamentally unfair that it violated his right to due process. Kater, 459 F.3d at 64. This is especially so, given that petitioner's basis for calling the disputed evidence "particularly offensive" — the length of time between when he was seen with the gun and when he actually took flight — could have been effectively addressed upon cross-examination.

**The medical examiner's testimony.**  At trial, the medical examiner testified that three incisions on O'Neill's left upper arm "resemble[d] a cluster of injuries caused when a person is being threatened by another person; an assailant makes tentative jabs and then musters enough courage or musters that drive to commit one final act, one or two final acts.  So, it would be threatening or torture injuries."  Fernandez, 152 N.H. at 244.  Petitioner objects to the medical examiner's use of the word "torture."  In petitioner's view, that word unfairly inflamed the jury because it "connotes unimaginable suffering," and the medical examiner's use of it impermissibly characterized his state of mind, a matter on which the medical examiner was not qualified to testify.  Given petitioner's claim of self-defense, the medical examiner's testimony was relevant.  Like the other two items of evidence at issue, its admission did not render petitioner's trial so fundamentally unfair that it violated his right to due process.  See Kater, 459 F.3d at 64.

## Conclusion

For the reasons given, defendant's motion for summary judgment (document no. 11) is granted, and the petition is dismissed.  The clerk of the court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

July 15, 2008

cc:  Paul J. Haley, Esq.
     Benjamin J. Agati, Esq.
     Stephen Fuller, Esq., NHAG
     John Vinson, NHDOC